IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

LUFKIN DIVISION

| | | |
|---|---|---|
| DAVID LEE BALLARD | § | |
| v. | § | CIVIL ACTION NO. 9:11cv198 |
| MARTHA GRAY | § | |

MEMORANDUM OPINION AND ORDER OF DISMISSAL

The Plaintiff David Ballard, an inmate of the Texas Department of Criminal Justice, Correctional Institutions Division proceeding *pro se*, filed this lawsuit complaining of alleged violations of his constitutional rights. The parties have consented to allow the undersigned United States Magistrate Judge to enter final judgment in the proceeding pursuant to 28 U.S.C. §636(c). The sole named defendant is a medication aide named Martha Gray.

In his complaint and at an evidentiary hearing, Ballard stated that on October 1, 2011, he and two other inmates were talking while in line for the pill window. When Ballard got to the window, Gray asked him who he was talking to, and Ballard replied that "I didn't say anything to you." He states that Gray then took his seven pills and threw them at him, striking him in the face; Ballard says that this caused his left eye to hurt and resulted in "trauma."

Gray has been ordered to answer the lawsuit and has filed a motion for summary judgment. In this motion, Gray argues that Ballard did not suffer any injury, or at most a *de minimis* injury, as a result of the incident. To the extent that Ballard may have suffered an injury, Gray says, he has failed to show that her actions proximately caused this injury. In addition, Gray argues that he has not shown that she acted maliciously and sadistically for the very purpose of causing harm, and that Ballard has failed to overcome her assertion of qualified immunity because he cannot show that a reasonable person in Gray's position would know that throwing a handful of pills at an inmate would amount to a constitutional violation.

1

In his response to the motion for summary judgment, Ballard says that Dr. Steven Bowers, who gave an affidavit in support of the motion for summary judgment, did not examine his left eye, has not seen him, and does not know what happened on October 1, 2011. He says that the "statement of undisputed material facts" in the motion for summary judgment is "conclusory" and not competent summary judgment evidence, and that Gray lacks credibility because she gave conflicting statements. He then says that the Defendant offered "no evidence whatsoever" in support of summary judgment and that all doubts are to be resolved in favor of the admissibility of evidence.

In her reply to Ballard's response, Gray asserts that Dr. Bowers' affidavit was offered as an expert witness and that even without this affidavit, the summary judgment evidence shows that Ballard was not injured in the incident. Gray also states that Ballard does not identify the "conclusory" statements to which he objects, that any conflicting statements by Gray go to weight rather than admissibility, and that if doubts should be resolved in favor of admissibility, this should apply to the summary judgment evidence which she offered.

The Defendant's Summary Judgment Evidence

Gray offers three items of summary judgment evidence in support of her motion. The first of these is an affidavit from a physician named Dr. Steven Bowers, M.D., concerning Ballard's medical records and condition. Dr. Bowers states that Ballard was seen six times by medical personnel between October 12 and December 30, 2011, and never mentioned that he had sustained an eye injury or that he was having eye problems. On December 31, 2011, he submitted a sick call request complaining that his eye hurt as a result of the October 1 incident, and a sick call exam on January 4, 2012, revealed a normal fundoscopic exam of the eye as well as a normal external eye exam.

Ballard was seen again on February 14, 2012, complaining of eye pain and headaches as a result of the October 1 incident. The medical provider noted that Ballard did not complain of this until January and conducted a flourescein eye exam, which was negative for lacerations, ulcers, or

other corneal abnormalities.[1] Ballard's acuity vision for distance was within normal limits, but his near vision was 20/200, and the provider suggested that he get commissary glasses for reading. The next month, on March 23, 2012, Ballard had an optometry appointment but signed a refusal of treatment form stating that "I didn't ask to go."

With regard to Ballard's mental health records, Dr. Bowers states that these do not indicate any charges in Ballard's mental health condition as a result of the October 1 incident. Ballard has been on the same medication for paranoid schizophrenia for five years and consistently reports that with this medication, he no longer feels like someone is after him, nor does he have bad dreams of being chased. Ballard affirmed this at a mental health appointment on October 12, 2011, less than two weeks after the incident.

Dr. Bowers concluded that Ballard sustained no damage as a result of the October 1, 2011 incident. He did not require pain medication or further treatment when seen on that date, and while tests showed that his near visual acuity was deficient, this was not because of pills hitting his eye but rather because Ballard is 49 years old and suffering the effects of presbyopia, an age-related condition in which the eye loses the ability to focus up close.

The next exhibit furnished by the Defendant consists of Ballard's medical records. These records show that Ballard was complaining of eye irritation and fatigue even before the incident. The injury report done on the day of the incident, which is contained in the use of force report, shows that Ballard was not injured and complained of no injuries.

On October 12, 2011, Ballard saw the mental health department for a routine follow-up. He stated that he was doing all right and that his medication, which included Thorazine, Prozac, and Dilantin, helped keep him "normal." Ballard reported that he has not had "bad dreams of being

---

[1] Dr. Bowers explains that a flourescein eye exam uses orange dye and blue light to detect foreign bodies in the eye, and can also detect superficial scratches or other problems with the surface of the cornea.

chased" and that when he takes his medication, he is "not scared." He had a history of visual hallucinations of "something coming after me" and paranoia when he is off his medications.

On October 16, 2011, Ballard was seen in the clinic for an injection of Vitamin B-12. The clinic note says that he tolerated this well and that there were "no further issues at this time." A week later, on October 24, Ballard was seen in the clinic for a sick call exam. He reported at that time that he still had some parasthesias (i.e. a burning or numbness) in his feet, but that his fatigue was markedly improving; however, sensation in the lateral toes was abnormal, neither improving nor progressing. The physician's assistant, Ruth Brouwer, noted that Ballard had a vitamin B-12 deficiency.

On December 31, 2011, Ballard submitted a sick call request, stating that he was hit in the eye with medication on October 1. He says that he "didn't think nothing of it at first" but that now his eye is "hurting real bad" and he is starting to have bad headaches; his vision is blurred and his eyes are watering. He was seen at sick call on January 4, and a fundoscopic examination of his eyes was normal; his pupils were equal, round, and reactive to light and accommodation, and his extra-ocular movements were intact. Brouwer noted that Ballard was sniffling and complaining of severe allergies, and gave him "cold busters," an antihistamine called periactin, a pain reliever called ibuprofen, and a medication for athlete's foot called tolnaftate for an unrelated complaint.

On February 14, 2012, Ballard was again seen in the clinic for a complaint of eye pain and headaches. Brouwer noted in the medical record that Ballard did not complain of these symptoms until January, despite the incident having occurred the previous October. The flourescein exam was negative for lacerations, ulcers, or corneal abnormalities, and his visual acuity for distance was normal and did not require a referral. She diagnosed a normal eye exam with presbyopia, and suggested commissary glasses for reading and a return to the clinic as needed. On March 23, 2012, Ballard was scheduled for a visit with the optometrist for vision changes, but signed a refusal of treatment form, saying "I didn't ask to go."

4

The Defendants also furnish a copy of the use of force video. This video picks up at the time that Ballard is being escorted to the infirmary. He is taken to the clinic, where the nurse takes his blood pressure and asks if he knows the date, to which Ballard says that it is the 1st. The nurse asks him what happened, and he says that he had pills thrown in his face. The nurse asks where in his face, and Ballard replies "just in my face." She asks what is his specific complaint, and Ballard says "assault."

The examining nurse states that she knows what happened and Gray's version of the story, saying that Gray told her that she "put the pills on the counter and they rolled off." Ballard says "yes ma'am." The nurse asks "so you have no injuries?" and Ballard replies "no." The nurse then terminates the examination. Ballard makes no mention of his eye at any point during the exam.

After the nurse leaves, the escorting officers prepare to take Ballard out of the clinic. Ballard is offered a form on which to write his statement and he indicates that he wishes to do so. Photographs are taken. Before they leave the clinic, one of the officers says "you stated to medical staff, Offender Ballard, you do not have any injuries, correct?" and Ballard says "correct." He is then escorted out of the clinic.

Ballard's Response to the Motion for Summary Judgment

In his response to the motion for summary judgment, Ballard contends that Gray acted with the intent to cause him serious harm, and that she caused damages by "irreparably injuring his left eye." He says that he was in the pill line on October 1, 2011, talking to another inmate named Keith Mims. When he got to the window, Gray asked who he was talking to. Ballard replied that "I didn't say sh*t to you." Gray then threw his seven pills in his face and said "I'm not talking to you," while ordering him to leave the pill window.

Ballard says that he left the pill window and told Captain Furr and Lt. Smith what had happened. Furr went to investigate and Smith called Gray on the phone. Furr came back and told Smith to have Ballard take a major use of force physical exam; he states that Gray admitted throwing the pills in Ballard's face. Ballard says that his eye would not stop hurting and he started having

migraine headaches in his left eye, which is when he filed his Step One grievance. Ballard also says that he started "hearing voices" and "seeing people chasing him," stating that the voices "was Ms. Gray telling me to kill myself." He states that he told his mental health case manager of this on October 10, nine days after the incident.

Ballard goes on to say that he was "nursing his left eye with non-aspirin" and on December 29, he wrote to the medical department. He refers to the January 4 and February 14 visits with Brouwer and says that on March 15, he had a court hearing in this case, and that he subsequently refused the visit with the eye doctor because he "didn't want the people I'm suing work on my left eye." He states that he keeps glancing to his left because he thinks someone is there, and that he still sees people chasing him and hearing voices.

Ballard notes that Gray at first said that she hit him with the pills and later denied it. He says that during the use of force exam, he stated that his left eye was hurting and that it stung, despite the fact that the video of the exam does not reflect any such statements. Ballard reiterates that he was "nursing his eye with non-aspirin" prior to filing his first sick call request and that he now gets 800 mg of ibuprofen for pain. He again states that he talked to his mental health case worker after the incident about hearing voices and people chasing him, and says that this evidence is proof that the defendant's motion for summary judgment should be denied.

<u>Ballard's Summary Judgment Evidence</u>

The first item attached by Ballard is a sick call request dated August 23, 2011, stating that he is tired all the time and "my eyes mess with me." He went to sick call the next day, and Brouwer noted that the eye irritation was resolved but that Ballard was very fatigued; she prescribed injections of Vitamin B-12. The next item consists of two affidavits from inmates Kevin Payne and Keith Mims, stating that Gray hit Ballard with the pills.

Exhibit C is a report from Lt. Smith, in which he says that he spoke to Gray by telephone. This report says that "the med tech stated that she did throw pills at the offender at which time the incident was treated as a use of force. OIG [Office of the Inspector General] is investigating the

matter." Ballard also includes a report from Captain Furr, which records the fact that Smith initiated a use of force investigation.

Exhibit D is a report from the major use of force investigation which says that on October 1, 2011, Lt. Smith was approached by Ballard, who said that Gray had thrown pills at him, hitting him in the face. Smith contacted Gray, who said that Ballard had cursed at her so she threw his medication at him. A video camera was called and Ballard was placed under escort.

Exhibit E is a grievance worksheet reflecting that Ballard had complained about having pills thrown at him. Exhibit F is Ballard's statement in the use of force investigation, saying that he had been hit in the face with pills and his left eye was sore. Exhibit G is the sick call request received in the medical department on December 31.

Next, Ballard attaches a page from the medical records dated January 4, 2012, which says that he had a visual acuity test for "trouble seeing things up close some blurriness with seeing things." These records also reflect a prescription for ibuprofen 800 mg.[2]

Exhibit H is Ballard's sick call request of February 24, 2012, and the report of the examination . This report notes that Ballard did not complain of the October incident until January and that the flourescein exam was negative for lacerations, ulcers, or corneal abnormality.

Ballard next attaches three request forms from May and June of 2012, after the filing of the lawsuit, complaining of eye problems. He includes a copy of the report from his October 12 visit with the mental health department, in which he stated that he was "doing all right" and that his medications keep him "normal." He admitted to a history of hallucinations of "something coming after me" and paranoia when he is off his medications. There was no mention of auditory hallucinations or "hearing voices."

Similarly, Ballard attaches a mental health report dated March 28, 2012. At that time. Ballard told the staff that he is all right and has no complaints; he has been on his current

---

[2]Ballard also attaches a document showing a prescription for "Motrin 800 mg," but these two medications are the same.

7

medications for five years and these help him to "not see things." He reported a history of hallucinations of being chased by people and a history of paranoia, reduced by medications. This report states that "no h/o A/H reported," meaning "no history of auditory hallucinations." Exhibit K is a clinic note dated April 16, 2012. This note, signed by Dr. James Smith, says that Ballard had an "intermediate office visit," and states "diagnosis suicide and self-inflicted injury by hanging."

The final exhibit is a written statement by Gray. This statement reads as follows:

> When I/M Ballard walked up to pill window he threw his ID card in the window at me so I ask him what was his problem   He said I didn't say or do sh*t. I had his medicine already in the cup his hand was in the window. He pulled his hand out and when I went to give him his pills they flew all over the pill window.

Legal Standards and Analysis
General Standards for Summary Judgment

On motions for summary judgment, the Court must examine the evidence and inferences drawn therefrom in the light most favorable to the non-moving party; after such examination, summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Securities and Exchange Commission v. Recile, 10 F.3d 1093, 1097 (5th Cir. 1994); General Electric Capital Corp. v. Southeastern Health Care, Inc., 950 F.2d 944, 948 (5th Cir. 1992); Rule 56(c), Fed. R. Civ. P.

To avoid summary judgment, the non-moving party must adduce admissible evidence which creates a fact issue concerning existence of every essential component of that party's case; unsubstantiated assertions of actual dispute will not suffice. Thomas v. Price, 975 F.2d 231, 235 (5th Cir. 1992), *citing* Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The Fifth Circuit has stated that once the moving party has met its burden, the non-movant must direct the court's attention to admissible evidence in the record which demonstrates that it can satisfy a fair-minded jury that it is entitled to a verdict in its favor. ContiCommodity Services, Inc. v. Ragan, 63 F.3d 438, 441 (5th Cir. 1995).

Summary judgment should be granted when the moving party presents evidence which negates any essential element of the opposing party's claim, including a showing that an essential element of the opposing party's claim is without factual support. First American Bank & Trust of Louisiana v. Texas Life Ins. Co., 10 F.3d 332, 334 (5th Cir. 1994). The granting of summary judgment is proper if the movant demonstrates that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Caldas & Sons v. Willingham, 17 F.3d 123, 126 (5th Cir. 1994). Once the movant makes this showing, the burden shifts to the non-movant to come forward with evidence sufficient to establish the existence of a genuine issue of material fact. Caldas, 17 F.3d at 126-27.

Although the Court must draw all inferences in favor of the party opposing the motion, an opposing party cannot establish a genuine issue of material fact by resting on the mere allegations of the pleadings. Hulsey v. State of Texas, 929 F.2d 168, 170 (5th Cir. 1991); *see also* Gordon v. Watson, 622 F.2d 120 (5th Cir. 1980) (litigants may not oppose summary judgment through unsworn materials). Similarly, a bald allegation of a factual dispute is insufficient, in itself, to create a genuine issue of material fact. Recile, 10 F.3d at 1097 n.15. A non-movant cannot manufacture a factual dispute by asking the Court to draw inferences contrary to the evidence. Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In short, a properly supported motion for summary judgment should be granted unless the opposing party produces sufficient evidence to show that a genuine factual issue exists. Hulsey, 929 F.2d at 170, *citing* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

The Fifth Circuit has stated that once the defendants have shifted the burden to the plaintiff by properly supporting their motion for summary judgment with competent evidence indicating an absence of genuine issues of material fact, the plaintiff cannot meet his burden by some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). The Court added that "summary judgment is appropriate in any case where critical

evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the non-movant." Little, 37 F.3d at 1075.

The movant has the initial burden of proof to demonstrate the lack of a genuine issue of material fact and the appropriateness of judgment as a matter of law. John v. State of Louisiana Bd. of Trustees for State Colleges and Universities, 757 F.2d 698, 708 (5th Cir. 1985). Once the movant has done so, the burden then shifts to the plaintiff, who must identify specific evidence in the record and articulate the precise manner in which that evidence supports his claims; the district has no duty to sift through the record in search of evidence to support a party's opposition to summary judgment. Stults v. Conoco, Inc., 76 F.3d 651, 656 (5th Cir. 1996). As for material facts on which the plaintiff will bear the burden of proof at trial, he must come forward with evidence sufficient to enable him to survive a motion for directed verdict at trial. Stults, 76 F.3d at 656; *see also* Johnson v. Deep East Texas Regional Narcotics Trafficking Task Force, 379 F.3d 293, 301 (5th Cir. 2004) (non-movant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim).

Application of the Standards to the Facts

Ballard's claim against Gray is that she used excessive force against him by throwing his pills at him, striking him in the face. Although Gray wrote a statement indicating that she did not throw the pills, this statement will be disregarded for purposes of a summary judgment proceeding; the Court will assume that Gray did in fact throw these pills and hit Ballard in the face with them.

The Defendant's motion for summary judgment argues first that Ballard suffered no injuries, or no more than *de minimis* injuries, as a result of the incident. The Supreme Court has held that the core judicial inquiry in such cases is not whether a certain quantum of injury was sustained, but rather "whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Wilkins v. Gaddy, 130 S.Ct. 1175, 1178 (2010).

The Court went on to note that "this is not to say that the absence of serious injury is irrelevant to the Eighth Amendment inquiry," explaining that the extent of injury suffered by an

10

inmate is one factor that may suggest whether the use of force could plausibly have been thought necessary in a particular situation, and may also provide some indication of the amount of force applied. Citing Hudson v. McMillian, 503 U.S. 1, 9 (1992), the Supreme Court stated that "not every malevolent touch by a prison guard gives rise to a federal cause of action" and that "the Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." Similarly, the Court noted that an inmate who complains of a push or shove that causes no discernible injury "almost certainly fails to state a valid excessive force claim." However, the Court observed that "an inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury."

While Wilkins makes clear that the quantum of injury is not the decisive factor in an Eighth Amendment claim, court precedents are nonetheless clear that *some* injury is necessarily required. The Supreme Court has explained that for a Section 1983 claim to be viable, the plaintiff must allege an injury. Memphis Community School District v. Stachura, 477 U.S. 299, 308 (1986); *see also* Carey v. Piphus, 435 U.S. 247, 265 (1978) (noting that whatever the constitutional basis for Section 1983 liability, damages must be designed so as to "compensate injuries caused by the constitutional deprivation;" Lewis v. Casey, 116 S.Ct. 2174, 2179-81 (1996) (actual injury must be shown to establish a violation of the right of access to court).

The Fifth Circuit has also made clear that no constitutional claim is stated when an alleged use of force results in no injuries. Brown v. Lippard, 472 F.3d 384, 387 (5th Cir. 2006), *citing* Harper v. Showers, 174 F.3d 716, 719 (5th Cir. 1999); Jackson v. Culbertson, 984 F.2d 699 (5th Cir. 1993). This comports with the holding in Wilkins that an inmate who complains of a push or shove that causes no discernible injury "almost certainly fails to state a valid excessive force claim."

In the present case, the Defendants argue that Ballard suffered no injury as a result of the incident. The video evidence shows that Ballard was seen on October 1 at a use of force exam, at

11

which he told both the nurse and the escorting officers that he had no injuries. When asked at the start of the examination, he stated that he had been struck in the face with the pills, but made no mention of being hit in the eye, even after being specifically asked where in the face he was struck. He later confirmed to the nurse as well as to the escorting officers that he was not injured, and did not complain of any injuries from this incident until almost three months later.

The medical records show that Ballard was seen by the mental health department on October 12, in the clinic on October 16, by physician's assistant Brouwer on October 24, and in the clinic on November 29, 2011, with no complaints about his eyes. Although Ballard complains that he was hearing voices of Ms. Gray telling him to kill himself, the record of his mental health visit contains no mention of any such complaint; on the contrary, the record shows that Ballard stated that he was "all right" and reflects that Ballard had no history of auditory hallucinations (i.e. hearing voices).

When Ballard finally did complain about his eye, three months after the incident, a fundoscopic exam of his eye on January 4 was normal, his pupils were equal, round, and reactive to light, and his extra-ocular movements were intact. Although he states that his eyes were watering and irritated, the physician's assistant noted that he was complaining of severe allergies and gave him medication for that condition. Although he received ibuprofen (motrin) at this visit, there is no indication that this medication was for eye pain; Ballard's medical records reflect a history of complaints of knee pain, and in fact he requested knee pads at the January 4 visit.

Additional examinations of Ballard's eye were carried out at the February 14 clinic visit. Like the ones five weeks earlier, these tests proved normal; they showed that Ballard had no lacerations, ulcers, or abnormalities to his cornea. His visual acuity was within normal limits, and while he complained of having difficulty with his near vision, the physician's assistant determined that he had presbyopia, which the expert witness Dr. Steven Bowers defined as "an age related condition in which the eye loses its ability to focus on objects up close." Ballard then refused an appointment to see an optometrist.

In Mosley v. White, 464 Fed.Appx. 206, 2010 WL 8497638 (5th Cir., December 13, 2010), (5th Cir., December 13, 2010), the plaintiff Morion Mosley complained that a TDCJ officer, Sgt. White, repeatedly poked him in the face and eye, causing "momentary blindness and cuts and abrasions in and around his left eye," which eventually became infected, swollen, and discolored. The district court determined that these injuries were *de minimis* and thus not constitutionally cognizable, citing Siglar v. Hightower, 112 F.3d 191, 193 (5th Cir. 1997) and Gomez v. Chandler, 163 F.3d 921, 924 (5th Cir. 1999). On appeal, the Fifth Circuit stated as follows:

> Arguably the injuries in this case - momentary blindness, cuts and abrasions in and around the eye, and an infected eye - fall somewhere between the injuries at issue in Siglar and the injuries at issue in Gomez. However, Mosley has not provided sufficient evidence that his injuries were constitutionally cognizable such that his claims would survive summary judgment. For example, in Gomez the inmate provided the court with an inmate use of force report, as well as a medical report indicating that he was injured and was treated for those injuries. Here, the record is devoid of such evidence.
>
> In response to White's motion for summary judgment, as previously explained, Mosley provided the district court with his affidavit and those of his co-inmates and his grievance reports. Although we recognize that the affidavits and reports constitute valid summary judgment evidence, Fed. R. Civ. P. 56(c)(4), we have explained that without more, 'conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the non-movant's burden' and defeat a motion for summary judgment. Douglass v. United Services Automobile Association, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*). As Mosley has not met his evidentiary burden that his injuries were objectively 'harmful enough' to constitute a constitutional violation, he fails to establish that White's conduct constitutes a violation of the Eighth Amendment. Thus, the district court did not err in granting White's motion for summary judgment.

In the present case, like Mosley, Ballard has offered no evidence that any injuries suffered were constitutionally cognizable. Although he attaches documents from the use of force exam and his medical records, these documents confirm that he was not injured; all of the examinations of his eyes showed no physical injuries such as lacerations, ulcers, or abnormalities, and his problems with near vision were diagnosed as an age-related condition called presbyopia. Ballard's conclusory allegations of injury are not sufficient to defeat the defendant's motion for summary judgment.

The courts have held that when an inmate alleges a serious medical need either for treatment or to avoid certain conditions, the inmate's bare assertion of a serious medical condition is

insufficient without medical evidence verifying that the condition exists. Aswegan v. Henry, 49 F.3d 461, 465 (8th Cir. 1995); *accord*, Kayser v. Caspari, 16 F.3d 280, 281 (8th Cir. 1994) (prisoner's self-diagnosis alone will not support a medical conclusion); McClure v. Foster, civil action no. 5:10cv78, 2011 WL 665819 (E.D.Tex., January 7, 2011, *Report adopted at* 2011 WL 941442 (E.D.Tex., February 16, 2011, *aff'd* slip op. no. 11-40272, 2012 WL 1059408 (5th Cir., March 29, 2012) (citing Aswegan and Kayser).

In Decker v. Dunbar, 633 F.Supp.2d 317, 342 (E.D.Tex. 2008), *aff'd* 358 Fed.Appx. 509, 2009 WL 5095139 (5th Cir., December 21, 2009), *cert. denied*, 131 S.Ct. 96 (2010), the plaintiff Kurby Decker complained, *inter alia*, that he suffered a "ruptured bladder" as a result of the defendants' actions. The defendants' motion for summary judgment addressed this claim by pointing out that the medical records contained no evidence that Decker had suffered a ruptured bladder. The district court, citing Aswegan and Kayser, concluded that Decker's assertion that he suffered from a ruptured bladder was nothing more than a self-diagnosis which lacked support in the medical records. The dismissal of Decker's lawsuit was affirmed by the Fifth Circuit.

Similarly, Ballard's self-diagnosis of eye injury lacks support in the medical records. He denied any injury when examined on the date of the incident, and did not even state that he had been hit in the eye. Subsequent examinations of his eye all proved normal, with no physical injuries such may have been sustained from an external trauma. The competent summary judgment evidence shows that Ballard sustained no injury from being struck by the pills thrown by Gray; as such, his use of force claim lacks merit.

In addition, Ballard has failed to show causation, even had he shown an injury. The records reflect that the incident occurred on October 1, 2011, and he denied being injured when seen by medical personnel that day; in fact, the video shows that Ballard did not even state that he had been hit in the eye during the use of force exam, but only that he had been struck "in the face," without specifying where. The first complaint which he made of an eye injury was in a sick call request which he sent on December 29, 2011, and which was received by the medical department on

December 31, almost three months later. Ballard has offered nothing to show that any eye condition of which he first complained in late December was the result of being struck in the eye by a pill almost three months earlier.

Finally, Ballard has failed to overcome Gray's invocation of the defense of qualified immunity. The Fifth Circuit has explained that public officials are entitled to qualified immunity on an excessive force claim unless (1) the plaintiff adduces sufficient evidence to raise a genuine issue of material fact suggesting that the official's conduct violated an actual constitutional right, and (2) the official's actions were objectively unreasonable in light of clearly established law at the time of the conduct in question. Newman v. Guedry, — F.3d —, 2012 WL 6634975 (5th Cir., December 21, 2012) (not yet published), *citing* Brumfield v. Hollins, 551 F.3d 322, 326 (5th Cir. 2008). Although qualified immunity is nominally an affirmative defense, the plaintiff bears a heightened burden to negate it once it is properly raised. Brumfield, 551 F.3d at 326; *see also* McClendon v. City of Columbia, 305 F.3d 314, 323 (5th Cir. 2002) (noting that when a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense).

The Fifth Circuit has stated that to discharge this burden, the plaintiff must satisfy a two-prong test. First, he must claim that the defendant committed a constitutional violation under current law, and second, that the defendant's actions were objectively unreasonable in light of the law which was clearly established at the time of the actions complained of. Kinney v. Weaver, 367 F.3d 337, 349-50 (5th Cir. 2004). These two prongs may be considered in either order. Saucier v. Katz, 533 U.S. 194, 201 (2001).

In this case, Ballard has failed to overcome Gray's defense of qualified immunity. While the actions of throwing pills at an inmate is not to be condoned, Ballard has not shown that a constitutional violation was committed, nor that Gray's actions were objectively unreasonable in light of clearly existing law. Numerous cases have held that the throwing of small objects, resulting in no or virtually no injuries, amounts to no more than a *de minimis* use of force. *See, e.g.*, Sardon v. Peters, slip op. no. 94-C-7505, 1995 WL 609147 (N.D.Ill., October 13, 1995) (throwing a carton

of spoiled milk on an inmate not a constitutional violation); Calabria v. Dubois, 23 F.3d 394, 1994 WL 209938 (1st Cir., May 24, 1994) (throwing a radio belt, causing a small amount of blood, not a constitutional violation); White v. Holmes, 21 F.3d 277, 279 (8th Cir. 1994) (throwing a set of keys at an inmate, followed by the officer placing her hands on the inmate's face and flailing her arms at his head, not a constitutional violation); Moore v. Machado, civil action no. C-07-0284, 2009 WL 4051082 (N.D.Cal., November 20, 2009) (throwing a dinner tray at an inmate was not a constitutional violation).

Ballard has not met his heightened burden to negate Gray's defense of qualified immunity because he has not shown that any constitutional violations were committed, nor that Gray's actions were unreasonable in light of clearly established federal law. The Fifth Circuit has specifically held that the plaintiff's burden of overcoming the qualified immunity defense cannot be discharged by conclusory allegations and assertions. Michalik v. Hermann, 422 F.3d 252, 262 (5th Cir. 2005). Ballard's conclusory allegations are not sufficient to overcome Gray's entitlement to qualified immunity, which was established through competent summary judgment evidence. The motion for summary judgment should be granted on this basis as well.

## Conclusion

The Court has carefully examined the record in this cause, including the Plaintiff's pleadings and testimony, the Defendant's motion for summary judgment, the Plaintiff's response thereto, the competent summary judgment evidence furnished by the parties, and all other pleadings, documents, and records in this case. Upon such review, the Court has determined that there are no disputed issues of material fact and that the Defendant Martha Gray is entitled to summary judgment on the claims against her. The Court has further concluded that Gray is entitled to the defense of qualified immunity. It is accordingly

ORDERED that the Defendant's motion for summary judgment (docket no. 37) is hereby GRANTED. It is further

ORDERED that the above-styled civil action be and hereby is DISMISSED with prejudice. Finally, it is

ORDERED that any and all motions which may be pending in this civil action are hereby DENIED.

So **ORDERED** and **SIGNED** this 10 day of **January, 2013.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE